**In re Darwin John MORETTI and Morita Moretti, Debtors.**

**LUMBERMEN'S INVESTMENT CORPORATION, Plaintiff,**

v.

**Darwin John MORETTI and Morita Moretti, Defendants.**

Bankruptcy No. 89–01983–LN.
Adv. No. 94–1082–LN.

United States Bankruptcy Court,
W.D. Oklahoma.

Oct. 12, 1994.

Kenneth C. McCoy, Oklahoma City, OK, for debtors.

Kirk J. Cejda, Oklahoma City, OK, for creditor.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

PAUL B. LINDSEY, Chief Judge.

### BACKGROUND AND UNDISPUTED FACTS

On May 2, 1986, debtors and Lumbermen's Investment Corporation ("LIC"), the mortgagee on debtors' principal residence, entered into a mortgage agreement on debtors' principal residence. On March 30, 1989, debtors filed their voluntary petition for relief under Chapter 13 of the Bankruptcy Code.[1] On the same date, debtors filed a motion requesting that this court determine, under § 506(a), that the value of the proper-

---

**1.** References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless the context requires otherwise.

ty, and therefore of LIC's secured claim, was $40,000.[2]

On April 14, 1989, LIC filed its objection, contending that § 1322(b)(2)[3] precluded any modification of its claim, including valuation under § 506(a).

On May 5, 1989, LIC filed two separate proofs of claim, one claim representing the principal amount remaining due and owing, and the other claim representing the accrued arrearages.

Debtors, on May 16, 1989, filed a second motion seeking a determination under § 506(a) of the value of LIC's secured claim and, in addition, an order under § 506(d) voiding LIC's lien to the extent its claim was unsecured.

A hearing was held on debtors' motion on June 13, 1989, at the conclusion of which this court took the issues raised by the motion and the LIC objection under advisement.[4] Thereafter, on July 25, 1989, this court denied debtors' request for an order determining the value of LIC's claim under § 506(a), relying on its earlier decision in *In re Tinsley*, No. BK–88–5022–LN (Bankr.W.D.Okla. June 27, 1989).

On August 22, 1989, LIC filed its objection to confirmation of debtors' Chapter 13 plan, relying on § 1322(b)(2), contending that the plan proposed to impermissibly modify LIC's note and mortgage.

On November 6, 1989, a hearing was held on confirmation of debtors' proposed Chapter 13 plan, and on LIC's motion to dismiss or convert debtors' case. After having heard the arguments of counsel, the issues before the court were taken under advisement. This court shortly thereafter decided *In re*

*Ross*, 107 B.R. 759 (Bankr.W.D.Okla.1989), in which it reconsidered and rejected the portion of *Tinsley* which had held that valuation and bifurcation of a mortgagee's proof of claim under § 506(a) constituted an impermissible modification contrary to § 1322(b)(2). Thereafter, on November 30, 1989, based upon *Ross*, and authorities cited therein, this court overruled LIC's objection to confirmation and denied its motion to dismiss or convert. Debtors were granted an opportunity to amend their plan in accordance with the court's decision.

On January 12, 1990, its request for reconsideration of the November 30, 1989, order having been denied, LIC timely filed its notice of appeal in the United States District Court for the Western District of Oklahoma.

On February 7, 1990, debtors filed their amended Chapter 13 plan. The amended plan provided, *inter alia*, that LIC would receive the amount of its allowed secured claim, $36,500, in deferred payments with interest.

On March 21, 1990, LIC filed its objection to debtors' amended plan, and requested that this court stay further administration of this case during the pendency of its appeal of the order of November 30, 1989. On May 7, 1990, at a hearing on confirmation of debtors' amended Chapter 13 plan, the court denied LIC's motion for stay pending appeal and overruled its objection to confirmation. On May 21, 1990, an order confirming debtors' Chapter 13 plan was entered.

On June 26, 1990, the district court entered its order affirming this court's order of November 30, 1989. LIC thereafter appealed the District Court's decision to the United

---

**2.** Section 506(a) provides, in material part, as follows: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim."

**3.** Section 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of se-

cured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

**4.** At this hearing, debtors and LIC stipulated that the value of the property was $36,500 for purposes of determining the secured value of LIC's claim under § 506(a).

States Court of Appeals for the Tenth Circuit. On March 1, 1991, the court of appeals entered its order affirming the district court, based upon its earlier decision in *Eastland Mortgage Co. v. Hart*, 923 F.2d 1410 (10th Cir.1991). LIC took no further action with regard to its appeal.

On June 1, 1993, the United States Supreme Court decided *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In *Nobelman*, the Court held that § 1322(b)(2) prohibits the modification of the rights of the holder of an undersecured homestead mortgage by bifurcating its claim into secured (equal to the fair market value of the mortgaged residence) and unsecured portions, and proposing to pay only the secured portion thereof.

The January 1991 decision of the court of appeals in *Hart* had remained the law of the Tenth Circuit continuously from the time of its issuance until it was superseded by *Nobelman* in June 1993.

On March 25, 1994, LIC commenced this action, requesting a declaratory judgment. In its complaint, LIC requests that this court determine, *inter alia*, whether the property securing its mortgage lien remains subject to that lien and to foreclosure. The parties have filed cross motions for summary judgment.

On March 31, 1994, after having successfully completed their confirmed plan, debtors were granted a discharge pursuant to § 1328(a).

## THE CONTENTIONS

LIC asserts that no determination was ever made by this court during the pendency of the underlying Chapter 13 case as to whether the lien securing its claim was void, under § 506(d), to the extent that it secured that portion of its allowed claim that was not an allowed secured claim under § 506(a). Relying upon *Harper v. Virginia Department of Taxation*, —— U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), LIC contends that *Nobelman* must be given retroactive effect, and that its lien must be held to remain valid and enforceable until the full amount of its allowed claim is paid. Thus, LIC contends that since the portion of its lien which was determined to be unsecured was not paid in full in debtors' plan, it may now foreclose on the property securing the lien.

Debtors argue that, pursuant to the provisions of § 506(d), a lien securing that portion of an allowed claim which is not an allowed secured claim is void by operation of law. In addition, debtors also assert that because LIC took no further action with regard to its appeal after it was affirmed by the Court of Appeals on March 1, 1991, LIC's reliance upon *Harper* is misplaced. Debtors therefore contend that since they paid the entire allowed secured claim of LIC under the confirmed Chapter 13 plan, and since the portion of LIC's lien securing the unsecured portion of its claim became void upon the successful completion of the confirmed plan, LIC's lien no longer attaches to or burdens the subject property.

## THE ISSUE

This court is called upon to decide whether LIC may litigate the issue of lien avoidance under § 506(d) at this time, more than four years after confirmation of debtors' Chapter 13 plan, and after debtors have successfully completed their plan and received their discharge. In this connection, the court must also determine whether *Nobelman* must or should be applied so that LIC will be free, after this case is closed, to enforce its lien against debtors' property to the extent that its total claim was not paid in debtors' Chapter 13 plan.

## DISCUSSION AND DECISION

■ *Harper* would require this court to apply *Nobelman* to the issues raised in this adversary proceeding at this time only if the court first found that the issues decided by this court in November 1989 and May 1990, were "still open on direct review and as to all events." *Harper*, —— U.S. at ——, 113 S.Ct. at 2517.

In fact, as is recited above, those decisions were affirmed by the district court in June 1990 and by the court of appeals in March 1991. At that point, further direct review would have been available only upon a writ of certiorari. No such writ was sought by LIC. Had LIC chosen to seek the issuance of a such a writ, it is at least possible that *Moretti*, and not *Nobelman*, would now stand for the proposition that § 1322(b)(2) precludes bifurcation and lien stripping of homestead mortgages. Since no such writ was sought or granted, the Supreme Court never had the opportunity to address the issues in connection with this case. More than two years elapsed before *Nobelman* was decided.

The decisions of this court, rendered in November 1989 and May 1990, have been final, and not open on direct review, since March 1991. Neither *Harper* nor any other authority to which this court has been directed, or of which it is aware, require the application of *Nobelman* to this case at this time.

These debtors went through considerable litigation of the issues in this court, and obtained affirmance of this court's decisions at the district and circuit court levels, over a period of almost exactly two years. During that period, and for the three years after the conclusion of those proceedings, more than two of which passed before *Nobelman* was decided, they made their Chapter 13 plan payments to the Chapter 13 trustee. Now they have completed their plan and obtained their discharge under § 1328(a).

To apply *Nobelman* at this late date is not required, and would be improper and highly inequitable. The probable result of such an application would be the loss of debtors' home through foreclosure. Preventing the loss of their home was the primary motivation for the institution of this bankruptcy proceeding more than five years ago, for the litigation to a successful conclusion, in three courts, of the issues raised then and now by LIC, and for the maintenance of payments over the years, which resulted in the successful completion of their Chapter 13 plan.

The contention of LIC, that its lien remains viable and enforceable because this court has never definitively ruled upon the issue of lien avoidance, is at best disingenuous. As is noted above, this court held, in *Ross*, that after bifurcation of an undersecured claim under § 506(a) into secured and unsecured components, § 1322(b)(2) did not prohibit the modification of the unsecured component. The court of appeals for the Tenth Circuit subsequently agreed, in *Hart*. Based upon those decisions, the avoidance of a lien such as LIC's in this jurisdiction, at least until *Nobelman*, was accomplished by operation of law pursuant to § 506(d).[5] No action by this court was necessary, or appropriate.

It is noted that § 506(d) does not *authorize* the avoidance of a lien, as, for instance, may be accomplished under § 522(f). Section 506(d) simply states that a lien such as is described therein *is void*. LIC's lien, to the extent that it secured LIC's claim against debtors in excess of $36,500, the stipulated value of the property, was precisely such a lien, and was rendered void by § 506(d) when LIC's objections were overruled and debtors' Chapter 13 plan, calling for bifurcation and lien stripping, was confirmed by this court.

The actions of this court, and the voiding of the lien which resulted therefrom, were of course subject to appellate procedures. These, however, were completed in March 1991, when the court of appeals affirmed the district court's affirmance of this court's actions.

The subsequent dismissal of debtors' case would have resulted in the automatic reinstatement of the lien by operation of § 349(b)(1)(C). The case, however, was not dismissed.

The actions of this court, including the voiding of the portion of LIC's lien which

---

5. Section 506(d), insofar as it is material to the issues before this court at this time, provides that: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...."

secured the unsecured portion of its claim, all of which became final more than two years prior to the decision in *Nobelman*, may not now be undone by reference to that decision.[6]

Neither may LIC invoke *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), a Chapter 7 case, in which the Court specifically limits its decision to the facts before it, determines that the words "allowed secured claim," as used in § 506(a) and § 506(d), have different meanings, and expresses no opinion as to whether those words have a different meaning in other provisions of the Code. *Dewsnup*, at ——, 112 S.Ct. at 778. *Dewsnup* is simply inapposite to the issues presented here.

Summary judgment under Rule 56, Fed. R.Civ.P., made applicable to this proceeding under Rule 7056, Fed.R.Bankr.P., is appropriate if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In this case, no question of fact, material or otherwise, is at issue. In this court's view, based upon the foregoing discussion, debtors are entitled to judgment in their favor as a matter of law. Thus, the motion for summary judgment filed by debtors will be granted and that filed by LIC will be denied. Judgment will be entered in accordance with these rulings.

IT IS SO ORDERED.

---

**6.** It is noted that *Nobelman* contains no mention whatever of § 506(b).