## HANSEN v. NATHANSON BROS. CO. et al.

Circuit Court of Appeals, Eighth Circuit.
March 23, 1929.

No. 8272.

Francis A. Mulfinger and Harold M. Kelley, both of Omaha, Neb. (Robert J. Webb, of Omaha, Neb., on the brief), for appellant.

Charles B. Keller, of Omaha, Neb. (George Doane Keller, of Omaha, Neb., on the brief), for appellees.

Before STONE, LEWIS, and COTTERAL, Circuit Judges.

COTTERAL, Circuit Judge. This appeal is brought by C. C. Hansen from an order disallowing a general claim, which he presented against the bankruptcy estate of Black & Hansen Company, incorporated under the laws of Nebraska.

The claim, which was verified, consisted of demand note of the bankrupt, dated January 1, 1923, for $14,283.10, bearing credits on December 12, 1923, of $283.10 on principal and $1,142.65 on interest, and it recited the consideration was money loaned to the bankrupt. By a verified amendment after the first hearing the several dates and amounts of money loaned were set out in an exhibit. The trustee objected to the claim on the grounds (1) that no such debt existed in fact; and (2) that the payments were made when the bankrupt was insolvent, within claimant's knowledge, and should be surrendered as a condition to the allowance of the claim.

After the original hearing, the referee found the debt established by the evidence and allowed it as a general claim. On review, the District Judge, although assuming verity on the part of the witness testifying to the claim without contradiction, found: "The most that can be claimed for the proof is that on occasions C. C. Hansen paid obligations owing by the bankrupt." He was impressed that L. O. Black (president and actual business manager of the company) and T. J. Hansen (son of the claimant and secretary-treasurer of the company), being without means, were borrowing to buy stock in the company, and the company, without cash for the stock, was borrowing to buy stores and merchandise, and under the circumstances he was convinced the only way the claim could be made out was for the claimant to submit a full and complete account of all the transactions in connection with the loans, and this could not be done by a showing that T. J. Hansen applied some of his father's funds and credits to obligations of the bankrupt. There was further discussion in the opinion, but the result was the order of the referee was reversed, with direction to permit further proof by the claimant as indicated, and, if wanting, to disallow the claim. There was another hearing, after which the referee found that a full account of the transactions had not been shown, and disallowed the claim, and the referee's action was confirmed by the District Court.

Without detracting from the weight of the findings of a trial court, we have considered the evidence, and are convinced the referee's decision in the first instance was correct, and the District Court erred in reversing it, and confirming the referee's second report.

The formal proof of the claim was a prima facie showing of its validity. Whitney v. Dresser, 200 U. S. 532, 26 S. Ct. 316, 50 L. Ed. 584. This was not overcome, but instead the evidence supported it. The view that the evidence showed only that claimant paid obligations of the bankrupt, or that there was but an application of his funds and credits thereon, or that Black and Hansen and the company were borrowing as stated, falls far short of giving due effect to the uncontradicted evidence and the proof of the claim.

The inquiry at the hearings appears to have been whether these outlays of claimant's funds were actually made. The testimony of T. J. Hansen shows without dispute every item of the payments from the claimant's funds upon debts of the bankrupt chiefly through the witness as his secretary at various dates from March, 1921, to November, 1922. There was no occasion for a second hearing, but it developed additional evidence in claimant's favor, mainly by way of book accounts of the transactions. The evidence does not formally show there was a promise by the company to return the moneys it received, but that they were loaned is established by the circumstances, the book accounts of the claimant, the execution of the note exhibited with the claim, and the retention of it by him after its date, and, if there were any question as to the fact, by the proof of the claim. It is true dealings between father and son should be examined with care and scrutiny. But the law recognizes the right of one to loan money to the

other, and the privilege of enforcing repayment will not be denied, where the transaction is duly proved. Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289. Our conclusion is that the evidence fully establishes the claim in question.

■ However, the trustee's second objection to the claim, which was not passed upon by the District Court, is well taken, as at the time of the payments on the note, some 12 days before bankruptcy the company had become undeniably insolvent, and we are persuaded by the evidence claimant had reasonable cause to believe they were preferential, and surrender of them was required, as a condition to the allowance of this claim. Sections 50g and 60b, Bankruptcy Act; 11 USCA §§ 78(g), 96(b). It is but a natural inference, from the intimate associations of the claimant and his son, who occupied the same offices in conducting the business of the Hansen Investment Company, the claimant's banking and business experience, and his opportunity and duty to learn the condition of the company's affairs. But the evidence discloses other pertinent facts to which we advert briefly.

In August, 1923, the company had acquired eight stores, and then owed almost twice the amount of its assets. The claimant had some knowledge of its needs, when his aid was enlisted in 1921 and 1922. In the summer of the following year, he learned its checks were going to protest, and the situation was such as to lead him and his son, after telegraphic communication, to arrange and attend a meeting of the store managers at Denison, when, on account of Black's incompetency, the son took over the finances of the company. It developed Black had not kept up the books, but depended upon invoices, which then showed the debts were $20,000 to $23,000. The books were removed to the office of the Hansen Investment Company at Omaha in August or September, 1923, and retained there, and one of its employees was engaged to make up and complete them. In September, 1923, claimant learned the company had debts in excess of $50,000. There is denial the son actually knew or apprised claimant that the company was insolvent, but the question is whether the latter had reasonable cause to believe it.

The order disallowing this claim is therefore reversed, and the cause is remanded to the District Court, with direction to allow the claim, on condition the payments, aggregating $1,425.75, be surrendered to the trustee, and otherwise to wholly disallow it.