## In re SMOLKA.

### In re Claim of M. J. WILK & SONS.
### No. 2366.

District Court, E. D. Michigan, N. D.
April 25, 1932.

Gilbert W. Hand, of Bay City, Mich., for bankrupt.

Kinnane & Leibrand, of Bay City, Mich., for trustee in bankruptcy.

Oscar Baker, of Bay City, Mich., for claimant.

TUTTLE, District Judge.

The bankrupt is a farmer. On February 18, 1931, he filed a voluntary petition in bankruptcy and was adjudged a bankrupt. His testimony and schedules showed that the title to the small farm where he lived with his family was held jointly with his wife and that the only property in which he had an interest and which was not exempt was an automobile, some live stock, and some farm tools, all covered by a chattel mortgage for $950.00 to M. J. Wilk & Sons, a copartnership, hereinafter called the claimant. This mortgage is contained in a written instrument which also contains a promissory note executed and delivered by the bankrupt to the claimant and secured by the said mortgage. The validity of this chattel mortgage is the only question involved.

The claimant duly filed its sworn proof of claim herein, expressly based upon, and referring to, the said written instrument, a copy of which was attached to the said proof of claim, and the claimant claims a lien upon the aforementioned personal property by virtue of the said chattel mortgage. The trustee in bankruptcy filed an objection to the said claim on the grounds, first, that the chattel mortgage was without consideration and intended to hinder, delay, and defraud the creditors of the bankrupt, and, second, that the chattel mortgage, if not without consideration, was given within four months prior to the filing of the petition in bankruptcy and while the bankrupt was insolvent, for the purpose of securing a pre-existing debt and thereby preferring the claim of the claimant over claims of other creditors of the same class.

The chattel mortgage was filed for record on November 1, 1930, less than four months before the petition in bankruptcy was filed on February 18, 1931. In accordance with the usual practice of this court, there was a reference of the bankruptcy proceeding to the referees in bankruptcy. The referees heard testimony relative to this claim and the issues raised by the objections of the trustee. Testimony of the bankrupt was taken through a Polish interpreter. Testimony was also given by Michael Wilk for the claimant. The testimony was confusing and unsatisfactory, but in substance it was to the effect that the bankrupt and his wife, on July 2, 1930, bought from the claimant, which was engaged in the business of selling automobiles, a Plymouth automobile, giving a note and chattel mortgage for $450.00 on the said automobile, to secure a balance of the purchase price therefor; that the claimant thereafter sold this note and chattel mortgage to the Saginaw Financing Corporation; that the bankrupt was poor and unable to make the payments on the automobile as they became due; that, while the claimant had not guaranteed this note and chattel mortgage, the payments thereafter due thereon were all made to the Saginaw Financing Corporation by the claimant, the last payment being made on October 29, 1930; that the bankrupt was not only unable to pay to the claimant the said $450.00, but was in need of additional money; that on November 1, 1930, the claimant loaned to the bankrupt an additional $500.00 in cash and took from the bankrupt, as security for this total indebtedness of $950.00, the chattel mortgage here in question upon the said automobile, stock and tools. The trustee called two witnesses. One was James H. Sleeth, of the Saginaw Financing Corporation, who did not dispute any of

the above-stated facts, and, apparently to the extent that he was able to remember and testify, corroborated the testimony of the claimant relative to the payments made by such claimant to the Saginaw Financing Corporation. The other witness called by the trustee was one Plazia, but he gave no relevant testimony. This witness was asked the following question: "What did Mr. Smolka say to you at that time about paying for his car?" The question was not answered. The record does not show that the referee excluded the question or that any exception was taken by counsel for the trustee. Thereupon, the following colloquy took place between the referee and the attorney for the trustee:

"Mr. Leibrand: All of our witnesses are right along the same line. There would be no use in calling them.

"Referee Marston: The record will show that you have other witnesses here who if you put them on the stand would testify that Mr. Smolka told them that he had paid the mortgage; is that it?

"Mr. Leibrand: Yes.

"Referee Marston: All right. I will give you an exception and the witnesses need not take the stand."

The referee held the chattel mortgage valid, and overruled the objections of the trustee, and the latter has petitioned for a review of that decision. The referee has certified the record and his findings to this court. The referee found that the objections of the trustee have not been sustained by any proofs showing that the chattel mortgage was without consideration, was fraudulent as against creditors, or was preferential, or even that the bankrupt was insolvent at the time such chattel mortgage was executed. I have examined the record and I fully agree with these findings of the referee. The properly filed proof of claim constituted a prima facie showing, sufficient, in the absence of evidence to the contrary, to sustain the claim. Whitney v. Dresser, 200 U. S. 532, 26 S. Ct. 316, 50 L. Ed. 584; In re Hannevig, 10 F. (2d) 941 (C. C. A. 2); Hansen v. Nathanson, 31 F.(2d) 896 (C. C. A. 8). It is not enough for the trustee to say that the claimant did not produce the checks by which payments were made to the Saginaw Financing Corporation. Three witnesses testified to the transaction. The trustee, on cross-examination of the witnesses Wilk or Sleeth, could have learned the names of all banks on which checks of the claimant were drawn, and by recalling such witnesses or subpoenaing other witnesses could have verified or disproved

these payments claimed to have been made by check. The testimony showed that $500.00 of the loan for which the chattel mortgage was given was cash which the witness Wilk, one of the members of the claimant partnership, obtained from his wife and turned over to the bankrupt. I usually view with suspicion testimony of large payments of money in cash for which there is no written record. There was, however, little cross-examination upon the subject and the wife was not called. There may have been a very satisfactory explanation and record as to the source of this money. Mere suspicion of fraud might justify investigation on the part of the trustee, but would not be sufficient grounds upon which a court could make an affirmative finding of fraud. Under familiar law, the burden was upon the trustee and absence of proof or unsatisfactory proof upon the part of claimant cannot be construed as meeting this burden resting upon the trustee. There is no evidence from which the court could find this chattel mortgage fraudulent or without consideration.

Nor is there any proof in the record as to the financial condition of the bankrupt on November 1, 1930, when the chattel mortgage was executed, and, therefore, no proof from which the court can find that a preference was intended or given as to any part of the sum secured by such chattel mortgage.

It is urged in the brief of the trustee that the referee erred in excluding the testimony of the witness Plazia and other unnamed and uncalled witnesses as to oral statements claimed by counsel, but not shown by any evidence, to have been made by the bankrupt relative to the payment of the chattel mortgage sold by the claimant to the Saginaw Financing Corporation. Any such statement, however, of the bankrupt out of court and not under oath would not be an admission against the interest of the bankrupt estate but would be self-serving and incompetent as against the claimant. The bankrupt was not called as a witness by the claimant, but was examined under section 21 of the Bankruptcy Act (11 USCA § 44) as a bankrupt. But as claimant to some extent relied upon the testimony of the bankrupt as corroborating the testimony of the witness Wilk, the trustee would be entitled to impeach, in a proper manner, such corroborating testimony of the bankrupt. No proper foundation, however, was laid for such impeaching questions. It is true that the bankrupt was asked the following questions and gave the following answers:

"Q. And you paid for it (the car) in full, didn't you? A. No.

"Q. Didn't you show John Plazia a receipt and tell him you had just made your last payment on the car and it was paid in full? A. No."

The attention, however, of the bankrupt was not called to the time or place where it was claimed he had made the statement in question or to what persons other than Plazia were present on that occasion. Furthermore, the only question asked of Plazia was not in proper form for an impeaching question even if proper grounds for impeachment had previously been laid. Such question asked of Plazia was: "What did Mr. Smolka say to you at that time about paying for the car?" The answer of the witness might have been a recital quite different than that contained in the question asked of the bankrupt. Moreover, this question was not answered by Plazia and no exception in that connection was taken. The record indicates that counsel for the trustee had other witnesses present before the referee who, if placed on the stand, would have testified that the bankrupt Smolka told them "that he had paid the mortgage." As already stated, such a statement, even if made by the bankrupt, would not have been competent evidence against the claimant. These unnamed witnesses could not have given such testimony to impeach the testimony of the bankrupt because the bankrupt, as already indicated, was not properly questioned concerning any statements claimed to have been made by him to, or in the presence of, such unnamed witnesses, even if it be assumed that he made such statements and that he had reference to the $450.00 chattel mortgage previously given by himself and wife to the claimant. If, by proper questions, in the laying of a foundation for impeaching the bankrupt, he had been properly asked about such a conversation, he might have remembered and admitted the statement and explained that it was not inconsistent with the testimony given at this hearing to the effect that the first mortgage had actually been paid by giving a new mortgage for the old indebtedness and an additional loan of $500.00. The record does not show the purpose for which such testimony would have been offered by the trustee or the grounds on which it would have been excluded by the referee. I hold that it was not admissible as proof against the claimant and that proper grounds had not been laid to make it admissible for impeachment. Ayers v. Watson, 132 U. S. 394, 10 S. Ct. 116, 33 L. Ed. 378; Gordon v. United States, 53 App. D. C. 154, 289 F. 552.

It is an elementary legal principle that he who alleges fraud must establish it by clear and convincing evidence. The contract of chattel mortgage here involved being valid on its face, it is plain that the burden of proving it invalid, either as fraudulent or as preferential, was upon the trustee in bankruptcy asserting such invalidity. W. S. Peck & Co. v. Whitmer, 231 F. 893 (C. C. A. 8); In re Mossler Co., 239 F. 262 (C. C. A. 7); In re Pingel (D. C.) 283 F. 664; In re Drugcraft Co. (D. C.) 288 F. 206. It is equally plain that the trustee did not, by a fair preponderance of the evidence, sustain his objections to this claim or his charges against the claimant. In a case where, as here, the burden of proof rests upon the trustee, it is not sufficient to point out weaknesses in the claimant's proofs. The claimant has shown a chattel mortgage good upon its face and has also introduced sworn testimony in addition to the presumption created by the filing of its proof of claim. Testimony offered by a claimant which went further than was necessary to create a presumption in such claimant's favor might be so apparently false, and based upon such an unreasonable foundation, as to destroy such presumption without any proof by the trustee. That is not the case here. In addition to the presumption already mentioned, the evidence affirmatively shows an actual consideration for this note and chattel mortgage which negatives any fraudulent or preferential intent and sustains their validity.

The exceptions and objections of the trustee are overruled. The findings and conclusions of the referee are affirmed. The chattel mortgage is held valid and the claim of the claimant, as a secured claim, is allowed. An order will be entered accordingly.