**In re Johnny C. BRITT and Betty Britt and Deborah A. Waltman and Carol McNeal Smith, Debtors.**

**Bankruptcy Nos. 95–42587, No. 95–42688 and No. 95–42596.**

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

Aug. 1, 1996.

S. Keith Eady, Talladega, Alabama, for debtors.

Allen Ramsey, Birmingham, Alabama, for Sears Roebuck Co.

Linda Gore, Gadsden, Alabama, for Mavis Willingham, the standing Chapter 13 trustee.

Carolyn Buchanon, for Coast to Coast.

## MEMORANDUM OPINION AND ORDER

JAMES S. SLEDGE, Bankruptcy Judge.

Each of these proceedings came before the Court on May 2, 1996, for a hearing on confirmation of a debt adjustment plan filed pursuant to 11 U.S.C. § 1321. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (L). The Court must determine whether the plans of reorganization in these cases may be confirmed despite an apparent discrepancy between the amount of one or more allowed secured claims in each case and the amount to be paid on account of such allowed secured claim under the respective plans.

Appearing at the Carol McNeal Smith hearing were Mavis Willingham, standing Chapter 13 trustee, Carolyn Buchanon, for Coast to Coast, and S. Keith Eady, Esq., attorney for the debtor. Appearing at the Johnny and Betty Britt hearing were Mavis Willingham, standing Chapter 13 trustee, Allen Ramsey, Esq., for Sears Roebuck Co., and S. Keith Eady, Esq., attorney for the debtors. Appearing at the Deborah A. Waltman hearing were Mavis Willingham, standing Chapter 13 trustee and S. Keith Eady, Esq., attorney for the debtor. No one was present for Sears Roebuck Co. or Farmer's Furniture at the Waltman hearing. The Court ordered briefs on the issues presented at these hearings. The debtor and trustee filed briefs in all three cases. Sears filed briefs in the Britt and Waltman cases. Upon full consideration of the arguments by counsel, the facts, and the law, the Court makes these findings:

### FINDINGS OF FACT

I. Smith case.

Carol McNeal Smith (hereinafter referred to as "Smith") filed her Chapter 13 bankruptcy petition on November 3, 1995. (BK 95–42596, Doc. 1) Coast to Coast filed a proof of claim on December 11, 1995, in the amount of $799.41. (BK Claim 5) Of this amount, the claimant declared that the claim was secured in the amount of $710.14 and was unsecured in the amount of $89.27. The proof of claim includes supporting documents (contract and security agreement) which indicate the claimant holds a purchase money security interest in the property securing the claim. Smith filed an amended plan, replacing all earlier plans, on April 5, 1996. (BK

Doc. 23) In her amended plan, Smith lists the total amount of the claim at $799.41 (the amount claimed by Coast to Coast) but proposes to treat the claim as secured in an amount different from the amount claimed by Coast to Coast to be secured. Smith values the collateral at $150.00 and, therefore, proposes to treat the claim of Coast to Coast as secured in the same amount and as unsecured in the amount of $649.41. Smith's amended plan calls for the secured portion of the claim to be paid in 60 months with monthly payments of $3.04, which includes 8% interest. The plan further estimates that allowed unsecured claims will be paid in full. At the confirmation hearing, there were no pending objections to confirmation.

Neither Smith nor the standing Chapter 13 trustee has filed an objection to the allowance of the claim of Coast to Coast. Neither Smith nor the standing Chapter 13 trustee has filed a motion for the valuation of the claim secured by a lien on property in which the estate has an interest. Coast to Coast filed a motion for valuation, but at the confirmation hearing, it moved to dismiss the motion; without objection the motion was dismissed.

## II. Britt case.

Johnny Britt and Betty Britt (hereinafter referred to collectively as "Britt") filed a joint Chapter 13 bankruptcy petition on November 2, 1995. (BK 95–42587, Doc. 1) Sears Roebuck & Co. (hereinafter referred to as "Sears") filed two proofs of claim on December 6, 1995.[1] Sears filed the first for $1,707.24 (BK Claim 5) and claimed the entire amount as a secured claim. Sears attached to this claim supporting documentation consisting of a copy of a Sears credit card receipt, which incorporates by reference a contract (also attached to the proof of claim) in which Britt granted Sears a purchase money security interest in all property purchased with the Sears credit card. Sears filed the second proof of claim in the amount of $456.11, all of which it claimed as unsecured. (BK Claim 4) The sum of Sears's

two claims is $2,163.35, which is the current balance of the account, as indicated by the supporting document attached to Claim 4.

Britt filed an amended plan replacing all earlier plans on January 16, 1996. (BK Doc. 14) This amended plan lists the total amount of indebtedness to Sears in the amount of $2,163.35, but proposes to treat the indebtedness as a secured claim in an amount different from the amount Sears asserted to be secured. Britt values the collateral at $500.00 and therefore proposes to treat the claim as secured only to the extent of $500.00 instead of $1,707.24, as filed by Sears. Britt proposes to pay the secured portion by paying $10.14 for each of 60 months, which also included 8% interest. The amended plan estimates that no money will be distributed to holders of allowed unsecured claims. An analysis of the plan by the standing Chapter 13 trustee shows that unsecured claims will be paid 75% of the allowed unsecured portion of the claim. Sears objected to confirmation based on the valuation of its collateral. (BK Doc. 12)

Neither Britt nor the standing Chapter 13 trustee has filed an objection to the allowance of any claim of Sears. Neither Britt nor the standing Chapter 13 trustee has filed a motion to determine the value of the claim secured by a lien on property in which the estate has an interest.

## III. Waltman case.

Deborah A. Waltman filed a Chapter 13 bankruptcy petition on November 13, 1995. (BK 95–42688, Doc. 1) Sears filed four proofs of claims—Claims 8, 9, 10, and 11—on December 26, 1995. Sears filed Claim 8 in the amount of $2,511.51, asserting the entire claim to be secured; this claim was not accompanied by any documentation. Sears filed Claim 9 in the amount of $0.00; this claim was accompanied by documentation that may be applicable to Claim 8. Sears filed Claim 10 in the amount of $971.79, all of which Sears characterized as unsecured.

---

1. Sears apparently separated one partially secured claim into two claims—one fully secured and one fully unsecured. This Court recently discussed the unitary nature of claims. In re

Cook, Case No. 95–42133. A claim is a right to payment or remedy. It can have both a secured and an unsecured portion but it still remains one claim.

The documentation supporting this claim is illegible. Sears filed Claim 11 in the amount of $115.34, all of which it claimed to be secured; Sears attached no documentation with this fourth claim.

In addition to presenting these four claims, Sears later filed three more proofs of claims (Claims 19, 20, and 21). Claim 21, which is substantially identical to Claim 8, contains the same documentation as Claim 9. It may have been filed to provide a proof of secured claim with all necessary supporting documentation. Claim 19 is the same as Claim 10, but it has no attached documentation. Claim 20 is the same as Claim 11, and the attached supporting documentation is illegible. The standing Chapter 13 trustee objected to all three claims on the ground that said claims were duplicates of previously filed claims; the Court sustained her objections and disallowed Claims 19, 20, and 21 on the date of the hearing, May 2, 1996. Sears objected to confirmation based on the valuation of its collateral, but was not present at the hearing. Its objection is deemed waived.[2]

Farmer's Furniture filed a proof of claim on November 27, 1995, in the amount of $1,490.25. (BK Claim 3) Farmer's Furniture stated the entire claim to be secured. Farmer's Furniture includes with the proof of claim copies of the contract supporting the claim and the purchase money security agreement creating a security interest in the purchased collateral.

Farmer's Furniture objected to confirmation on November 27, 1995, objecting both to the value given by the plan to the collateral and interest rate provided in the plan. (BK Doc. 10) Farmer's Furniture did not attend the confirmation hearing to advocate its objection, and, therefore, its objection is deemed waived.[3] Waltman filed an amended plan (BK Doc. 12) on December 7, 1995, in which she values the collateral of Farmer's Furniture at $400.00 and therefore treats the claim as secured to the amount of $400.00 and not $1,490.25 as Farmer's Furniture

claims. The plan proposes to pay this secured claim in 36 monthly installments in the amount of $12.53; this proposed payment includes interest at an annual rate of 8 per cent. The amended plan also provided for "Sears Plus" claim in the amount of $2,511.51 (presumably Claim 8) with collateral securing the claim valued at $175.00; with plan payments of $5.48 for 36 months on the secured portion of the claim. Waltman filed an amended plan on May 14, 1996 (BK Doc. 23), increasing the value attributed to Sears's collateral to $700.00, and treating the claim as secured to the amount of $700.00 and paying the secured portion of the claim in 36 monthly installments of $21.94, which includes interest at 8 per cent. The remaining portion of the claim, $1,811.51, is treated as unsecured. The plan proposes to pay nothing on unsecured claims.

Except as indicated above, neither Waltman nor the standing Chapter 13 trustee has filed any objection to the allowance of any claim of Sears or Farmer's Furniture. Neither Waltman nor the standing Chapter 13 trustee has filed a motion for valuation of a claim secured by a lien on property in which the estate has an interest.

## IV. Provisions common to each debtor's plan.

Each debtor is represented by the same law firm and each plan and plan summary contains the following provision:

> If a timely objections [sic] or motion for valuation is not filed fifteen (15) days prior to the date fixed for the confirmation hearing, the Court will determine that the secured claims are secured to the extent of the amount listed in the collateral value fields in the plan and plan summary and will determine the remaining portion of the claims to be unsecured.

A copy of the plan summary was reproduced on the reverse of the notice of the § 341 meeting and the confirmation hearing. The standing Chapter 13 trustee prepared this

---

**2.** Administrative Order, entered March 12, 1993, governs procedure in Chapter 13 cases filed in this Court. Paragraph 13 of that Order requires objections be advocated at the hearing or they are deemed waived.

**3.** Administrative Order, entered March 12, 1993, paragraph 13.

notice and mailed it to all listed claimholders in each case. The amendments to the plan were served on the standing Chapter 13 trustee and all listed claimholders in each case.

## CONCLUSIONS OF LAW

The issue confronting the Court is whether the plans in these cases may be confirmed despite an apparent discrepancy between the amount of several allowed secured claims in each case and the amount to be paid on account of each allowed secured claim under the respective plans. The discrepancy, if it exists, would prevent the plan from satisfying § 1325(a)(5). Although a plan may be confirmed without satisfying all the requirements of § 1325(a), this Court refuses to exercise its discretion to confirm a plan which does not satisfy § 1325(a)(5).

The briefs filed by the standing Chapter 13 trustee and by each debtor rely primarily on cases involving post-confirmation issues, specifically on the binding effect of confirmation. The Court initially notes that the plans in these cases have not been confirmed. Indeed, the issue is whether the plans may be confirmed. Before the Court need address post-confirmation issues, it must first determine whether the plans can be confirmed.

**4.** A plan that pays less than 100% on unsecured claims.

**5.** Section 1325(b) provides:
(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
    (A) for the maintenance or support of the debtor or a dependent of the debtor; and
    (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

**6.** Section 1322 provides:

The debtors and the standing Chapter 13 trustee contend that a special provision in the plan requires the Court to determine the value of property securing a claim pursuant to § 506(a) at the value amount recited in the plan. They argue that such valuation eliminates any conflict between the amount of the allowed secured claims and the amounts provided on account of allowed secured claims in the plan. They conclude, therefore, that § 1325(a)(5) is met. The Court disagrees and denies confirmation in each case.

I.  Requirements for confirmation.

Section 1325 governs the confirmation of debt adjustment plans under Chapter 13. Confirmation of Chapter 13 plans can be quite complex. Confirmation hearings are held after the bar date for filing proofs of claims in order to fully analyze the claims and rights of all parties in interest. *In re Taranovich,* No. 93–42152, 1994 WL 329429 (Bankr.S.D.Ga., June 30, 1994). Subsection (b)(1) sets forth certain minimum elements required for confirmation by prohibiting the Court from confirming a "composition" plan [4] over the objection of the trustee or holder of an allowed unsecured claim unless the plan meets the "disposable income" test.[5] Section 1322 also specifies certain requirements for plans of reorganization in Chapter 13 cases.[6]

(a) The plan shall—
    (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
    (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and
    (3) if the plan classifies claims, provide the same treatment for each claim within a particular class.
(b) Subject to subsections (a) and (c) of this section, the plan may—
    (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;
    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debt-

Confirmation is improper where a plan fails to conform to its provisions. *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Sections 1322 and 1325(b), however, contain the only statutory requirements for plan confirmation. The Court finds that each of the plans in these cases satisfies both §§ 1322 and 1325(b). No party raises any deficiency of the requirements of §§ 1322 and 1325(b)(1)(B), and the Court finds all requirements satisfied. The Court *may*, therefore, confirm them.

■ Section 1325(a) need not be satisfied for the Court to confirm a plan. Section 1325(a) is a "safe harbor" provision by which the debtor can require the Court to confirm a plan which satisfies all its provisions. It provides the Court "shall confirm a plan if," in addition to satisfying subsection (b), the plan complies with the provisions of each of the six paragraphs of subsection (a).[7] Consequently, the "court is required to confirm if [the] six requirements are met." H.Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) p. 430. *See also,* S.Rept. No. 95–989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) p. 142. Unlike § 1129, which allows confirmation "only if" all of its requirements are met, § 1325(a)

or's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

(6) provide for the payment of all or any part of any claim allowed under section 1305 of this title;

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;

(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity; and

(10) include any other appropriate provision not inconsistent with this title.

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

(d) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

(e) Notwithstanding subsection (a) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

7. Section 1325(a) provides:

Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this Chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under Chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(I) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

does not impose mandatory requirements. *In re Szostek,* 886 F.2d 1405, 1412 (3d Cir. 1989). The Court has discretion, therefore, to confirm a plan which satisfies §§ 1322 and 1325(b) but does not satisfy § 1325(a). *Id.*

█ In exercising this discretion, however, the Court is mindful of the rights that were bargained for by the debtors and the secured creditors. Each secured creditor in these cases bargained for a right to deferred payment and the right to foreclose on the property securing the payment. Section 1325(a)(5)(B), which requires the Court to confirm if the plan provides each holder of an allowed secured claim will retain its lien and receive full payment of the present value of the allowed secured claim, was enacted to "significantly protect secured creditors." 124 Cong.Rec. H 11107 (Sept. 28, 1978). The lien thus retained "secures the value of the collateral" and therefore "secure[s] deferred payments to the extent of the amount of the allowed secured claim." *Id.* Sound public policy strongly supports the right of each secured claimholder to retain its lien until it has received the future value of the deferred payments for which it bargained—to the extent of the amount of its allowed secured claim. The Court is extremely reluctant, therefore, to confirm a plan which does not comply with § 1325(a)(5).

In order to determine whether a plan complies with § 1325(a)(5), the Court must determine which claims are allowed, which allowed claims are secured, and the extent to which allowed secured claims are secured. The debtors have attempted to assist the Court in making these determinations. In each case they provided claimholders, through the clerk of Court, and by direct service when amended plans are filed, with notice that the Court would determine the value of the collateral and, therefore, the allowed secured claim, to be equal to the amount stated in the "collateral value field" of the plan summary. The threshold consideration of whether § 1325(a)(5) is satisfied is the issue whether the debtors' notices are adequate.

## II. Secured claims allowance.

The Code creates a binary system for allowing secured claims. First, the claim must be allowed. Then, if the claimant claims to be secured, the claim must be determined to be secured or unsecured.

### A. Allowance of claims.

The operation of the system for allowing claims depends on whether an objection to the claim is filed. If no objection is filed, a properly filed proof of claim is *deemed* allowed. 11 U.S.C. § 502(a). The legislative history indicates that the claim is deemed allowed because of an evidentiary presumption, codified at Fed.R.Bankr.P. 3001(f),[8] in favor of the validity of a claim as filed: "A proof of claim or interest is *prima facie* evidence of the claim or interest. Thus, it is allowed under subsection (a) unless a party in interest objects." H.Rep. 95–595, 95th Cong., 1st Sess. (1977) pp. 353–355.[9] Section 502(a) does not direct the Court to enter an order allowing the claim nor does it mention the court or an order of court; claims allowed under § 502(a) are allowed by operation of law and without any order. The claims submitted in these cases with the required supporting documentation are, therefore, allowed by operation of law.

---

8. Rule 3001(f) states: "A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim."

9. Some uncertainty exists as to the precise effect of "deeming" when a party presents evidence in opposition to the deemed fact. Judge Russell opines that things deemed done "not only do not require further evidence, but evidence is not allowed to rebut that which has been 'deemed' to have been done." Barry Russell, Bankruptcy Evidence Manual, 1994–95 ed., § 301.16. Several early bankruptcy cases held to the contrary and, based on their reading of the legislative history of § 1126(f), allowed evidence of rejection to rebut deemed acceptance of plan by unimpaired classes. *See, e.g., In re Polytherm Industries, Inc.* 33 B.R. 823, 832 (W.D.Wis.1983) (allowing); *In re Landau Boat Co.,* 13 B.R. 788, 790 (Bankr.W.D.Mo.1981) (same); *In re Marston Enterprises, Inc.,* 13 B.R. 514, 518–521 (Bankr. E.D.N.Y.1981) (same). Congress, however, shortly thereafter substituted the phrase "conclusively presumed" for the word "deemed." No bankruptcy cases since have addressed the evidentiary effect of something having been "deemed." However, the debtors in the cases at bar have not attempted to present any evidence.

The procedure of deemed allowance does not, however, prevent a debtor or trustee from challenging the validity or amount of a claim because the claim is deemed allowed *only* in the absence of an objection.[10] If the debtor or trustee does object, the claim is not deemed allowed; its allowance is held in abeyance and the Court must have a hearing to determine the amount of the claim and enter an order allowing the claim in that amount. 11 U.S.C. § 502(b).

In determining the amount of the claim, the Court is aided by a well-defined allocation of the burden of proof. The burden of proof consists of two separate burdens: the burden of persuasion and the burden of going forward with evidence (often referred to as the burden of production). *Director, Office of Workers' Compensation Programs v. Maher Terminals, Inc.,* 512 U.S. 267, ——, 114 S.Ct. 2251, 2255, 129 L.Ed.2d 221 (1994). Rule 3001(f) places the burden of going forward on the party objecting to the allowance of a claim when the proof of such claim is properly filed; it states: "A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." Fed.R.Bankr.P. 3001(f).[11] By allowing the proof of claim to constitute evidence in favor of the claim, the Rule 3001(f) fixes the burden of going forward on the party objecting to the claim.[12]

A proof of claim filed in accordance with the rules constitutes *prima facie* evidence of the validity and amount of the claim. Fed.R.Bankr.P. 3001(f); *In re Fullmer,* 962 F.2d 1463 (10th Cir.1992); *Green Tree Acceptance Inc. v. Calvert (In re Calvert),* 907 F.2d 1069, 1071 n. 1 (11th Cir.1989); *Matter of Fidelity Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir.1988).[13] This evidence places on the party disputing the claim the burden of going forward with evidence of probative force equal to that of the allegations of the claim-holder's claim. *In re VTN, Inc.,* 69 B.R. 1005, 1008 (Bankr.S.D.Fla.1987); *In re Wells,* 51 B.R. 563, 566 (D.Colo.1985); *Matter of Townview Nursing Home,* 28 B.R. 431 (Bankr.S.D.N.Y.1983); *In re Breezewood Acres, Inc.,* 28 B.R. 32 (Bankr.M.D.Pa.1982). If the objecting party fails to offer sufficient evidence to overcome the evidentiary effect of the properly filed proof of claim, the objection will be denied and the claim will be allowed as filed. *Matter of Texlon,* 28 B.R. 525 (Bankr.S.D.N.Y.1983); *In re Trending Cycles for Commodities, Inc.,* 26 B.R. 350, 351 (Bankr.S.D.Fla.1982).

**10.** The filing of a proof of claim has been compared to the filing of a complaint in a civil action. *Nortex Trading Corp. v. Newfield,* 311 F.2d 163 (2d Cir.1962). Just as in a civil action, in which the defendant's right to present evidence to rebut the assertions of the complaint is conditioned on the filing of an answer, the debtor's right to present evidence to rebut the assertions of the proof of claim depends on an objection.

**11.** Proofs of a claims based on a writing must be accompanied by the writing on which the claim is based, as must proof of an interest in property securing the claim. Fed.R.Bankr.P. 3001(c). If the creditor asserts a security interest in property, the proof of claim must be accompanied by proof of the perfection of the security interest. Fed.R.Bankr.P. 3001(d).

**12.** At least one court has referred to Rule 3001(f) as creating a "presumption." *In re Fullmer,* 962 F.2d 1463, 1466 (10th Cir.1992). Although a presumption may allocate the burden of going forward, Fed.R.Evid. 301, not all allocations of the burden of going forward are presumptions. "[A] presumption is a standardized practice, un-der which certain facts are held to call for uniform treatment with respect to their effect as proof of other facts." *N.L.R.B. v. Purnell's Pride, Inc.,* 609 F.2d 1153, 1160 (5th Cir.1980), quoting Edward W. McCleary, et al., McCormick's Handbook of the Law of Evidence § 342, at 803 (2d ed. 1972 & Supp.1978). *Accord, Pennzoil Co. v. F.E.R.C.,* 789 F.2d 1128, 1136 n. 23 (5th Cir. 1986). A presumption is a judicially or statutorily created rule of law, by which the finding of one fact gives rise to existence of a presumed fact. Rule 3001(f) is not a rule which mandates the evidentiary effect of finding a given fact; no initial fact is found which gives rise to the *prima facie* validity of the claim. Consequently, Rule 3001(f) does not create a presumption.

**13.** This presumption predates the Bankruptcy Act of 1898. *In re Felter, Park & Co.,* 7 F. 904, 906 (D.N.J.1881). It was also operative under § 57(a) of the Act and Bankruptcy Rule 301(b). *Whitney v. Dresser,* 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906); *In re Hannevig,* 10 F.2d 941, 942 (2d Cir.1925); *In re Carter,* 138 F. 846, 847 (W.D.Ark.1905); *In re Cannon,* 133 F. 837, 838 (E.D.Pa.1904); *In re Wooten,* 118 F. 670–71 (E.D.N.C.1902); *In re Shaw,* 109 F. 780, 781 (E.D.Pa.1901).

Although Rule 3001(f) places the burden of going forward on the objecting party, the burden of ultimate persuasion rests always with the claimant. *Fidelity Holding,* 837 F.2d at 698; *In re DeLorean Motor Co. Litigation,* 59 B.R. 329 (E.D.Mich. 1986); *In re Wells,* 51 B.R. 563 (D.Col.1985); *In re Lampert,* 61 B.R. 785 (Bankr W.D.Wis. 1986); *In re Century Inns, Inc.,* 59 B.R. 507, 522 (Bankr.S.D.Miss.1986). If and only if the objecting party presents evidence of equal probative weight, the burden of going forward shifts back to the claimant. *Century Inns,* 59 B.R. at 522. The claimant must then offer evidence to carry its burden of persuasion. This allocation of the burden of going forward "provides a proper balancing of burdens, assuring that objecting party does not underprove its objections, while, at the same time, assuring that the claimant filing the proof of claim need not overprove his claim at the mere cry of inequity by the objecting party." *Id.,* citing *Matter of Multiponics, Inc.,* 622 F.2d 709, 714 (5th Cir.1980).

**B. Determination of secured status.**

**(1) 11 U.S.C. § 506(a).**

Section 506 requires the Court to determine the value of a claimholder's interest in property in which the estate has an interest. This determination is critical to determining the extent to which the allowed claims are secured. An allowed claim secured by a lien on property in which the estate has an interest is a secured claim to the extent of the value of the claimholder's interest in the estate's interest in the property; it is unsecured to the extent that the value of the claim exceeds such interest. 11 U.S.C. § 506(a). The Court must make this determination in conjunction with any hearing on confirmation of a plan affecting a claimholder's interest. 11 U.S.C. § 506(a).[14] Rule 3012 implements § 506(a) and allows the Court to "determine the value of a claim secured by a lien on property in which the estate has an interest." Such a determination is important for the treatment of claims under the plan. The Court must determine the value of claimholder's interest both to comply with § 506(a) and to determine whether the plans comply with § 1325(a) and (b).

**(2) Absence of Rule 3012 motion.**

At least one court has held that a bankruptcy court may value collateral only on the motion of a party. *In re Harrison,* 987 F.2d 677, 681 n. 7 (10th Cir.1993). However, the Eleventh Circuit tacitly approved the court's holding a valuation hearing without a Rule 3012 motion provided the relevant parties had adequate notice. *Green Tree Acceptance, Inc. v. Calvert (In re Calvert),* 907 F.2d 1069, 1071–72 (11th Cir.1990). This Court, therefore, will not require a Rule 3012 motion as a condition precedent to valuing collateral, provided adequate notice of the valuation is given to the claimholder.[15]

**(3) Notice: Due Process.**

In order to determine the rights of parties with respect to interests in proper-

14. "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). *See also,* S.Rept. No. 95–989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) p. 68 ("This determination shall be made in conjunction with any hearing ... on a plan affecting the creditor's interest.")

15. "Prior to confirmation of a Chapter 13 plan, the Bankruptcy Code establishes various procedures to allow parties to determine which of their rights will be addressed within the plan. For example, 11 U.S.C. § 506 addresses the determination of whether and to what extent a claim is secured, and FED.R.BANKR.P. 3012 allows a party to file a motion requesting that the court make such determination. Further, 11 U.S.C. § 501 and FED.R.BANKR.P. 3002 address the filing of proofs of claim, and § 502(a) provides that a properly filed proof of claim is allowed unless a party in interest timely objects. See also 11 U.S.C. § 1323(a) (providing that the debtor may freely modify the plan at any time prior to confirmation). Once a plan is confirmed, however, the parties' rights generally become fixed by the terms of the plan as finally confirmed. See 11 U.S.C. §§ 1323(b), 1327(a). Therefore, during the pre-confirmation period the parties should be given every allowable. opportunity under the Code to determine their rights." *In re Fiorilli,* 196 B.R. 83 (Bankr. N.D.Ohio 1996) (a case which involved substantially similar plan provisions and notices, but the holding addressed a preliminary issue of whether a claimholder had waived the right to object to confirmation).

ty, the bankruptcy court must comply with due process. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). Due process requires, at a minimum, notice and an opportunity to be heard; adequate notice is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). "In order to satisfy due process requirements, 'the notice [of the proceedings] must be of such nature as reasonably to convey the required information. . . .' In the present case, the information required by statute is that [the debtor] plans to hold a section 506 valuation hearing. Therefore, in order 'reasonably to convey the required information,' [the debtor's] notice to creditors must state that such a hearing will be held." *In re Linkous*, 990 F.2d 160, 162–63 (4th Cir.1993), quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657 (citations omitted). The question whether in each of the instant cases the debtor's notice satisfies due process depends on whether the notice provided sufficient information for claimholders to determine that the confirmation hearing would include a § 506 valuation. The resolution of each issue depends, therefore, on whether the notice adequately notified claimholders that the Court would address valuation issues. For the reasons specified below, the Court concludes that the notice did provide sufficient information to apprise claimholders that the Court would value collateral at the confirmation hearing and that due process requirements, therefore, are satisfied.

(4) Notice: *In re Calvert.*

Although the Court is required by 11 U.S.C. § 506(a) to determine the value of collateral at the confirmation hearing, Rule 3012 requires a "hearing on notice to the holder of the secured claim." Fed. R.Bankr.P. 3012. *In re Calvert* holds that, as a condition precedent to making the required determination under § 506(a), the Court must comply with Rule 3012 by providing specific notice that it will value collateral at the confirmation hearing. *Green Tree Ac-*ceptance, Inc. v. Calvert (In re Calvert)*, 907 F.2d 1069, 1072 (11th Cir.1990). *Accord, Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160 (4th Cir.1993) *aff'g* 141 B.R. 890, 894 (W.D.Va.1992) (notice of valuation must satisfy Rule 3012). *Cf. In re Harrison*, 987 F.2d 677, 681 n. 7 (10th Cir. 1993) (motion under Rule 3012 is prerequisite to valuation hearing). *But see, In re Fox*, 142 B.R. 206, 208 (Bankr.S.D.Ohio 1992); *In re Pourtless*, 93 B.R. 23, 25 (Bankr.W.D.N.Y. 1988).

In *Calvert*, the bankruptcy court conducted a valuation hearing pursuant to § 506(a) after providing claimholders only with a notice of reconsideration of a denial of confirmation. The bankruptcy court had provided a prior notice of the hearing at which confirmation was denied; it notified claimholders that "the Court on it's [sic] own motion will receive evidence of the value of collateral and determine allowed secured claims or secured portions of allowed claims." 907 F.2d at 1070 (Emphasis in original omitted). The notice of the second confirmation hearing did not contain this provision.

The Eleventh Circuit found that "the bankruptcy court violated the procedural requirements of Rule 3012 when it failed to give specific notice to [t]he holder of the secured claim [t]hat it would take up the collateral valuation issue." 907 F.2d at 1072. Put another way, the court found error in "[m]ere notice that the bankruptcy court will hold a confirmation hearing on a proposed bankruptcy plan, without inclusion of notice specifically directed at the security valuation process." *Id.* The court further observed that the "bankruptcy court's [first] notice that it *might* hear the valuation issue at the first confirmation hearing also violated Rule 3012." *Id.*, at 1072 n. 3. The notice must specifically state that the bankruptcy court will value collateral securing allowed claims. 907 F.2d at 1072. Further, the notice must be specifically directed to those claimholders whose collateral is to be valued so that "creditors will not needlessly attend hearings where collateral valuation will not be contested." *Id.*, at 1072 n. 3.

Section 506 plainly requires the bankruptcy court to value collateral at the confirmation hearing. *Calvert* requires compliance with Rule 3012 by requiring notice to each claimholder whose collateral will be valued that the court will do so. This Court must interpret these two provisions harmoniously. *In re Henderson,* 197 B.R. 147, 155 (Bankr. N.D.Ala.1996); *In re Duke,* 153 B.R. 913, 916 (Bankr.N.D.Ala.1992). In order, therefore, to fulfill its statutory obligation to value collateral, the Court must ensure that the secured claimholders whose collateral will be valued be provided notice that the Court will value the collateral at the confirmation hearing. This Court must decide whether the notice by the debtors in the instant cases provided in their respective plans and plan summaries satisfies the requirements of *Calvert.*

*a. Notice of determination of secured claim.*

The issue is whether the plan in each case adequately notified secured claimholders that the Court would conduct a hearing under § 506(a). The notice must comply with Rule 3012 by apprising each secured claimholder that the Court will actually determine "the value of such creditor's interest in the estate's interest in [p]roperty." 11 U.S.C. § 506(a). The notice in these cases informed the creditors on the matrix that in the absence of a timely objection, "the Court will *determine that the secured claims are secured to the extent of the amount listed* in the collateral value fields in the plan and plan summary and will *determine the remaining portion of the claims to be unsecured.*" (Emphasis added) The notice did not state specifically that the Court would determine the value of any interest in property. Nor does the notice state specifically that the

Court will "determine the *value* of a claim secured by a lien on property in which the estate has an interest." Fed.R.Bankr.P. 3012 (Emphasis added). Instead, the notice states that the Court will determine the *extent* of a secured claim to be equal to a specified amount.

■ A strict reading of *Calvert* would require the notice to state that the Court will receive evidence of and determine the value of each claimholder's interest in property in which the estate has an interest. The claimholders would not necessarily be notified, however, that the value so determined would be the amount of their respective allowed secured claims.[16] The notice in the instant cases does not provide notice that the Court will value collateral but does provide notice of the ultimate result of the Court's determination of the value of collateral—the extent of allowed secured claims. The notice states that the Court will adjudicate the rights of any claimholder claiming an interest in property in which the estate also has an interest. The purpose of the notice required in Rule 3012 is to provide a claimholder claiming security interests in estate property with an opportunity to oppose the debtor's adverse treatment of its secured claim. *In re Dupree,* 183 B.R. 270, 281 (Bankr.W.D.Okla. 1995). Each claimholder in each instant case received "notice that the debtor intend[ed] to value the collateral for the creditor's debt at a lower value than the amount of the debt, and to treat only the value of the collateral as secured and the balance as unsecured." *Id.* at 281. A claimholder which knows its secured interest may be thus adversely affected by a Court ruling at the confirmation hearing regarding the extent of its allowed secured claim knows everything which *Calvert* and Rule 3012 require.[17] Because the

---

**16.** The Eleventh Circuit in *Calvert* implicitly prohibited the court from considering constructive knowledge of § 506(a) to operate as notice that the Court will value collateral merely because § 506(a) requires it. See, 907 F.2d at 1071–72. This is the mistake the District Court made. *Green Tree Acceptance Inc. v. Calvert (In re Calvert),* 99 B.R. 80 at 82 n. 1 (N.D.Ala.1988), *rev'd* 907 F.2d 1069. The Eleventh Circuit apparently permits, however, the Court's imputing knowledge of the legal consequence of a hearing to take evidence of the value of collateral.

**17.** The imputed knowledge prohibited by *Calvert* is much different from the inference required of secured claimholders in the instant cases. The notice in each instant case informs the claimholders that the Court will make a determination of the extent of each secured claimholder's secured claim. The notice also informed the secured claimholders that the determination would be based on the debtor's value for the collateral in question.

notice provides secured claimholders with information regarding the legal effect of the hearing—determination of the extent of secured claims—the notice provides information which is not of less use to secured claimholders than one which complied with a strict reading of *Calvert*.[18] The notice provided in each case sufficiently notified claimholders that the Court would conduct a § 506(a) hearing in conjunction with the confirmation hearing. The notice in question substantially complies, therefore, with the requirements enunciated in *Calvert*.

### b. Evidence.

■■■■■ The plans in these cases provides adequate notice that the Court would address valuation. The plans are inaccurate, however, in predicting the outcome of the valuation hearing. The provision in each unconfirmed plan binds no one, least of all the Court. See, *In re Fiorilli*, 196 B.R. 83, 86 (Bankr. N.D.Ohio 1996). The bankruptcy court in *Calvert* announced that it would "receive evidence," *Calvert*, 907 F.2d at 1070–71, and, indeed, the debtor did testify as to the value of the property in question. *Id.*, at 1071. No one offered any evidence in these three cases at their respective confirmation hearings. As discussed below, the Court may not rule as the plans announce in these cases because the debtors did not present sufficient evidence to overcome the *prima facie* evidence of a secured claim created by each properly filed proof of claim. The provisions of an unconfirmed plan do not benefit from any evidentiary effect or presumption.

■■■■■ The evidentiary status of a properly filed claim results in the allowance of the claim unless evidence to the contrary overcomes it and imposes on the claimant the burden of going forward to prove its claim. According to one court, "the allegations of the proof of claim are taken as true" under Rule 3001(f). *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991). The *prima facie* effect articulated in 3001(f) also applies to the secured status of the claim which the Court determines under § 506(a). *FDIC v. Union Entities*, 83 F.3d 1020 (8th Cir.1996); *In re Harrison*, 987 F.2d 677, 681 (10th Cir.1993); *United States v. Woodway Stone Co.*, 187 B.R. 916, 918 (W.D.Va.1995); *In re Elmira Litho, Inc.*, 174 B.R. 892, 901 (Bankr. S.D.N.Y.1994); *In re Stoecker*, 143 B.R. 879, 882 (N.D.Ill.1992); *In re Alternative Publications, Inc.*, 186 B.R. 912, 914 (Bankr. S.D.Ohio 1995); *In re Robertson*, 135 B.R. 350, 352 (Bankr.W.D.Ark.1992); *In re Schaumburg Hotel Owner Limited Partnership*, 97 B.R. 943 (Bankr.N.D.Ill.1989); *In re South Atlantic Packers Assoc. Inc.*, 30 B.R. 836 (Bankr.D.S.C.1983); *In re Lampert*, 61 B.R. 785, 787 (Bankr.W.D.Wis.1986); *Matter of DeLorean Motor Co.*, 39 B.R. 157 (Bankr. E.D.Mich.1984). See also, *In re Chateaugay Corp.*, 154 B.R. 29, 32 (Bankr.S.D.N.Y.1993); *In re Wells*, 51 B.R. 563, 567 (Bankr.D.Colo. 1985) (holding that trustee offered evidence of probative value regarding valuation of security equal to the evidence of the proof of claim, thus implying that 3001(f) presumption applies to determination of secured status).[19] Any party seeking to challenge the extent of the secured status of a properly filed proof of claim, therefore, bears the burden of going forward with evidence to rebut the allegations in the proof of claim.

---

18. *See Sipes v. Atlantic Gulf Communities Corp. (In re General Development Corp.)*, 84 F.3d 1364 (11th Cir.1996) (affirming bankruptcy court in holding that substance of notice to claimholder satisfied due process).

19. Although the reported cases decided under the Code unanimously hold that the *prima facie* status applies to the validity and amount of the secured claim, cases decided under the Bankruptcy Act of 1898 were split as to the *prima facie* validity of the assertion of secured status. Cf. *Weekley v. Oil Well Supply Co. (In re Flint & Strother Co.)*, 12 F.2d 539 (4th Cir.1926) and *In re Jones*, 151 F. 108, 109 (W.D.Mich.1907) (presumption does not apply to assertion of priority) with *Matter of Estrada's Market*, 222 F.Supp. 253, 256–57 (S.D.Cal.1963) (questioning *Weekley* and *Jones*, but deciding tax lien is valid without evidence beyond proof of claim because tax liens "fall into an exceptional category"), *In re Smolka*, 58 F.2d 403, 405 (E.D.Mich.1932) (holding trustee bears burden of rebutting presumptive validity of chattel mortgage by showing the transfer was without validity, was fraudulent, or was preferential), and *In re Castle Braid Co.*, 145 F. 224, 229 (S.D.N.Y.1906) (allegation in proof of claim that no security was held is accepted in the face of objection in the absence of any proof to the contrary).

III. Application of the law to the cases at bar.

No party has presented any evidence to overcome the *prima facie* evidentiary effect of the properly filed proofs of claims regarding the secured status of the claims. The brief for each debtor asks the Court to "find that the secured claims are secured to the extent of the amount listed in the collateral value fields in the plan and plan summary and determine the remaining portions of the claims to be unsecured." None of the debtors have given the Court any evidence with which to make such determination. Each debtor and their counsel are required to attend the confirmation hearing, unless all disputed issues have been resolved.[20] Therefore, each debtor should have presented evidence of valuation. Each debtor must satisfy the burden of proof for confirmation. A bare and unsupported objection to the allowance of a claim is insufficient to overcome the *prima facie* evidentiary effect of a properly filed proof of claim. *In re Trending Cycles for Commodities, Inc.*, 26 B.R. 350, 351 (Bankr.S.D.Fla.1982). Likewise, a provision in an unconfirmed plan does not deprive the claim of the *prima facie* validity of the secured claim.[21]

In the Smith case, Coast to Coast filed its proof of claim in accordance with the rules. In the Britt case, Sears filed its proof of claim in accordance with the rules. In the Waltman case, Farmer's Furniture filed its proof of claim in accordance with the rules. Thus, each of these claims is supported by *prima facie* evidence of its validity and amount. With respect to each claim the burden of going forward with evidence rested on any party objecting to the claim. Because no party has objected to any of the claims, each such claim is deemed allowed. 11 U.S.C. § 502(a). Because no party has offered any evidence contrary to the proof of claim, the only evidence the Court may consider is each proof of claim itself—which is *prima facie* evidence of the extent of the security interest—even though no claimholder presented evidence of collateral value at the confirmation hearing.

In each case, therefore, the Court declines to value the collateral as provided in the plan. The Court *must* value the collateral because 11 U.S.C. § 506(a) requires it. The Court, therefore, values the collateral securing each allowed claim in the amount specified in its respective proof of claim. In the Smith case, the property securing the allowed claim of Coast to Coast is valued in the amount of $710.14; the allowed secured claim is determined, therefore, to be $710.14. In the Britt case, the property securing the allowed claim of Sears is valued at $1,707.24; the allowed secured claim is determined, therefore, to be $1,707.24. Finally, in the Waltman case, the property securing the claim of Farmer's Furniture is valued at $1,490.25; the allowed secured claim is determined, therefore, to be $1,490.25.[22] The Court makes these determinations based on the only evidence presented to it—the proofs of claims filed by the holders of the claims.

The Smith plan proposes to pay Coast to Coast the amount of $150.00 as principal repayment. This figure is based upon the debtor's erroneous valuation of the collateral. The plan proposes this repayment in deferred payments with 8% interest.

---

**20.** Administrative Order, entered March 12, 1993, paragraph 14.

**21.** Such a provision in a *confirmed plan*, of course, might be different, as the briefs for the debtors and standing Chapter 13 trustee argue at length. *See*, 11 U.S.C. § 1327(a); *Matter of Penrod*, 50 F.3d 459 (7th Cir.1995); *Lee Servicing Co. v. Wolf*, 162 B.R. 98 (Bankr.D.N.J.1993). *But see, Cen–Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir.1995). In the instant cases, however, the Court does not address the effect of such a provision in a confirmed plan.

**22.** The Court need not discuss the effect of Sears's claims in the Waltman case not being filed with the supporting documentation required by Fed.R.Bankr.P. 3001(c) & (d) because sufficient reason exists to deny confirmation based on the plan's treatment of the Farmer's Furniture claim. The Court notes that proofs of claims must be executed and filed in accord with the Rules to benefit from Rule 3001(f) affording *prima facie* evidence of the validity and amount of the claim. If the proof of claim is not filed and executed in accord with the Rules, it is not filed under § 501 and, therefore not deemed allowed under § 502(a). See *In re Taranovich*, No. 93–42152, 1994 WL 329429 (Bankr.S.D.Ga., June 30, 1994) (court does not accept nor recognize proof of claim filed without supporting documentation).

The plan proposes interest payments totaling $32.40. The total amount of these deferred payments and interest is $182.40. Unlike the other two plans, this plan also provides full payment to holders of allowed unsecured claims, without interest.[23] The plan erroneously characterizes the remainder of Coast to Coast's allowed claim ($649.41) as unsecured. The total amount the plan proposes to pay Coast to Coast, therefore, is 831.81. Based upon this amount, an argument could be made that the debtor is paying the full amount of the allowed secured claim ($710.14). However, the claimant is entitled to the present value of its secured claim. This requires an acceptable interest rate to accompany the secured claim. Substituting the correct amount of the allowed secured claim ($710.14), the amount of interest to be paid is the same $32.40; the plan contemplates, therefore, that Coast to Coast receive full payment of its allowed secured claim in the amount of $742.54 with an effective interest rate of approximately two per cent. This Court cannot conclude that payment of this allowed secured claim with 2% interest satisfies the present value provision of § 1325(a)(5)(B)(ii), even though the plan calls for 8% interest.

The Britt plan proposes to pay Sears the amount of $500.00 on account of Sears's allowed secured claim, in deferred payments with 8% interest. This amount is less than the amount of Sears's allowed secured claim. The plan, therefore, fails to satisfy the full payment provision of § 1325(a)(5)(B)(ii). *In re Jones,* 119 B.R. 996 (Bankr.N.D.Ind.1990) (section 1325(a)(5)(B)(ii) not complied with by proposal to pay $19,000 where the collateral for the debt has a value of $21,800).

The Waltman plan proposes to pay Farmer's Furniture the amount of $400.00 on account of its allowed secured claim, in deferred payments with 8% interest. This amount is less than the amount of Farmer's Furniture's allowed secured claim. The plan, therefore, fails to satisfy the full payment provision of § 1325(a)(5)(B)(ii). *Id.*

In order to obtain confirmation of a plan which provides payment to a holder of a secured claim in an amount less than the present value of the amount for which secured claim is filed, the debtor has three options. First, the debtor may object to the allowance of the claim. Second, the debtor may dispute the value of the secured status of the claim, either by disputing the validity of the security interest, the value of the collateral, or otherwise. By choosing either of these options, the debtor bears the burden of going forward with evidence if the proof of claim is filed in accordance with the rules. Finally, the debtor may attempt to persuade the Court to confirm despite the plan's not complying with § 1325(a)(5). In the instant cases, the debtors have presented no evidence and have not persuaded the Court to disregard § 1325(a)(5) in confirming plans. These debtors have not met their burden of proof.

It is therefore ORDERED that confirmation is denied in each of these three cases.

---

**23.** As mentioned earlier, the other two plans are composition plans which estimate nothing being paid to unsecured claimholders (although Walt- man may have sufficient funds to make some distribution to unsecured claimholders).